## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

COHESITY, INC., a Delaware Corporation,

      Plaintiff,

      v.

DANILO RODRIGUEZ, an individual,

      Defendant.

Civil Action No.

## COMPLAINT

Plaintiff Cohesity, Inc. ("Cohesity" or the "Company") hereby brings this complaint against Danilo Rodriguez ("Rodriguez" or "Defendant").  Cohesity alleges as follows:

## THE PARTIES

1.     Plaintiff Cohesity is a Delaware corporation with its principal place of business at 2625 Augustine Drive, Santa Clara, CA 95054.

2.     Defendant Rodriguez is a resident of the Commonwealth of Massachusetts.  From February 2025 to January 30, 2026, Rodriguez was employed by Cohesity to work in Massachusetts.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.  Because the remaining counts are so related to the federal law claim that they form part of the same case or controversy, this Court has supplemental jurisdiction over those counts pursuant to 28 U.S.C. § 1367(a).

4.     This Court has personal jurisdiction over Rodriguez because he is a resident of the Commonwealth of Massachusetts.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this district.  Venue in this district is proper under 28 U.S.C. § 1391(c) as to Rodriguez because he is a natural person who resides in this district.

## FACTUAL BACKGROUND

**A.     Cohesity's Business and the Company's Trade Secret and Confidential Information.**

6.      Founded in 2013, Cohesity is one of the largest and fastest growing providers of artificial intelligence-powered data security and data management software solutions.  Cohesity's products and services are designed to secure, protect, manage, and gain valuable insights and analytics from data stored in global computer networks across local, remote, edge, and cloud computing networks.  Cohesity provides its services to businesses, institutions, and government agencies with substantial data management needs in the United States and around the world.  This includes many of the world's most sophisticated and widely recognized companies, including nearly half of the companies on the Fortune 100 list.  Cohesity helps defend against cybersecurity threats with comprehensive data security and management capabilities, including immutable backup snapshots, artificial intelligence-based threat detection, malicious behavior monitoring, and rapid recovery at scale.

7.      Cohesity has created innovative, cutting-edge enterprise backup and recovery solutions.  As explained by Gartner,[1] a leading technology research and insight firm, enterprise backup and recovery solutions help enterprises with large and expansive amounts of business-critical data protect these workloads by capturing a point in time copy (backup) of enterprise data for the primary purpose of recovering it in the case of loss.  These solutions allow enterprises to recover vital data that might otherwise be lost in an accidental, malicious, or environmental event.  Thus, Cohesity's data backup and recovery solutions allow enterprises to ensure business

---

[1] https://www.gartner.com/reviews/market/enterprise-backup-and-recovery-software-solutions.

continuity, avoid considerable downtime, lost revenue, diminished capacity, and the risk of regulatory fines during a potential data-loss event.

8.    Cohesity's technologies have been recognized by top industry organizations for its high-quality and have earned numerous rankings and recognitions year over year, including:

a.  named to the Forbes 2024 Cloud 100, the definitive ranking of the top 100 private cloud companies in the world;

b.  named as a Leader in the Gartner Magic Quadrant for Enterprise Backup and Recovery Software Solutions for four years in a row;

c.  named in the Gartner Peer Insights Customers' Choice for Enterprise Backup and Recovery Software Solutions for six years in a row;

d.  named HPE Global Momentum Technology Partner of the Year;

e.  among CRN's Security 100, Storage 100, and Cloud 100 Companies for 2024;

f.  among CRN's inaugural AI 100 Companies for 2024;

g.  earned a five-star rating in CRN's 2024 Partner Program Guide for five years in a row;

h.  named a Leader in the IDC MarketScape for Worldwide Cyber Recovery;

i.  selected in D.A. Davidson & Co.'s The Heard report for 2024, recognizing the top 100 private software companies globally;

j.  awarded the NorthFace Scoreboard Award for excellence in customer service for eight years in a row;

k.  named the Gold Winner for Best User Interface at the 2023 London Design Awards;

l.  designated a 2023 Leader in the Omdia Universe: Protecting and Recovering Data in the Cloud Era, 2022–23 report;

m.  ranked among the top four vendors in the industry and as an Outperformer in the 2023 GigaOm Radar Report for Enterprise Scale-Out File Systems; and

n.  named a Leader in The Forrester Wave: Data Resilience Solution Suites, Q4 2022 report.

9.      Cohesity devotes a tremendous amount of time and resources to evaluating each customer's needs in order to provide bespoke product recommendations specifically tailored to offer robust data protection in the customer's unique environment.  In addition, Cohesity closely compares its market presence to its competitors to determine how best to direct and expand its business and product offerings.  Cohesity's strategic business planning plays an instrumental role in the success of Cohesity's overall business.  The information collected as part of this process as well as Cohesity's comprehensive sales strategy constitutes Cohesity's trade secrets because it is not public, gives Cohesity a competitive edge in the marketplace and derives independent economic value from being kept confidential from third parties.

10.     Through this process and with the use of its trade secrets, Cohesity has identified and built relationships with customers through years of work, including Nasdaq, Nationwide Insurance, Delta Airlines, AutoNation, Salesforce, Phillips 66, Broadcom, NEC, and several top U.S. banks.

11.     Cohesity's yearslong presence in the data security industry has allowed it to acquire the information necessary to understand the broad range of customers requiring data security services, unique customer needs, and how market values and fluctuations impact the ability of Cohesity to market and sell its products.

12.     In the course of building and maintaining relationships with its customers, Cohesity acquires distinct information about the attributes of each customer with which it does business and with which it has had communications, including each customer's unique data security needs; current and historical utilization and pricing information related to the customer's use of Cohesity products; contact information for individuals at the customer's business who are in a position to make decisions about individual and nationwide purchases; contractual terms with customers; and projections of future product purchases.

13.     There are no publicly available lists of, and no publicly available means to obtain, customer information containing the detailed information Cohesity collects and uses in its business operations.


14.     This unique customer information derives independent economic value and gives Cohesity a competitive advantage from not being known to or by its competitors.

15.     Similarly, through significant effort and expense, Cohesity has additionally developed trade secret and confidential pricing strategies to help negotiate contracts and pricing with its customers.  Cohesity's pricing strategies are built upon an individual assessment of each customer and a broader assessment of similar customers with whom Cohesity does business.

16.     In this regard, Cohesity develops a pricing strategy for its products by, among other things, drawing on its experience with other similarly situated customers, analyzing each particular customer's specific needs, and providing tailored offerings to each customer.  These strategies have given Cohesity a competitive edge over other companies that provide similar products, including one of its main competitors, Rubrik, Inc. ("Rubrik").

17.     Cohesity has also expended substantial effort and resources in developing and implementing training programs and sales strategy materials.  These resources assist Sales Engineers and Account Executives in the field with marketing, selling, and uniquely positioning Cohesity's products, such as responding to customer questions, distinguishing Cohesity's products from its competitors' products, and understanding the value drivers and differentiators of Cohesity's products.

18.     For example, Cohesity has developed internal assessments and related presentations regarding the value drivers and differentiators of its products and services; non-public information about how the Company conducts its business; highly confidential information about Cohesity's customers; detailed insider knowledge about the Company's future business plans; confidential presentations about how to win business from Cohesity's competitors; comparative analyses of Cohesity's competitors; detailed customer lists, reflecting sales projections and pricing information; competitive metrics; strategic selling presentations which detail strategies for positioning Cohesity against its competitors; and employee lists with contact data constitute trade secrets and confidential and proprietary information that are not available to the public and cannot be easily ascertained or developed.

19.     Cohesity's trade secrets and its confidential and proprietary information give it an edge over its competitors and derive value because they are kept a secret.

**B.     Cohesity Takes the Steps Necessary to Protect its Trade Secrets and Confidential Information.**

20.     Cohesity takes the steps necessary to protect the secrecy of its trade secrets and confidential and proprietary information, especially information concerning its pricing strategies, contract terms, marketing and sales protocols, market-and customer-targeting strategies, and market development information.

21.     Cohesity uses a variety of controls to regulate access to its electronically stored data and communications to protect the security and confidentiality of its sensitive information.

22.     For example, employees given access to Cohesity's trade secrets and other confidential and proprietary information are required to execute a Proprietary Information & Confidentiality Agreement ("Confidentiality Agreement") containing provisions protecting Cohesity's confidential information.

23.     The Confidentiality Agreement requires employees to hold in strictest confidence, and not to use, except for the benefit of the Cohesity, or to disclose to any person, firm or corporation any confidential information of the Cohesity, including after their employment ends.

24.     To avoid all doubt, the Confidentiality Agreements explains that it applies to all non-public information of Cohesity.  Because Cohesity's ability to sell its products and services to customers is at the heart of its business, the Confidentiality Agreement expressly states that it applies to information relating to pricing lists or strategies, customers lists and customers, customer buying and selling habits and special requirements.

25.     Additionally, the Confidentiality Agreement requires employees to return all property, including all proprietary information belonging to Cohesity, at the end of their employment.

26.     Cohesity further has developed and implemented policies designed to protect the Company's confidential and trade secret information.  For example, the Cohesity U.S. Employee

Handbook explains that employees "cannot use or disclose proprietary information except as authorized by Cohesity" both during employment and after employment has ended.

27.     Similarly, in the Cohesity Code of Conduct, employees are reminded that they may only "[u]se confidential information only as authorized and do not share it with anyone who is not authorized to see it—including other Cohesity personnel."  Here, again, Cohesity explains that its confidential information includes "product development and business plans," "financial data," "pricing strategies," and "marketing plans," among other categories.  Consistent with its other policies, the Code of Conduct states that employees' "obligation to protect confidential information continues even after your employment or contract with Cohesity ends."

28.     The Code of Conduct is supplemented by the Acceptable Use Policy and Standard ("Use Policy"), which applies to all Cohesity employees.  The Use Policy sets clear guidelines for how Cohesity employees can interact with Cohesity's confidential information stored on physical devices owned by Cohesity and on the Company's network.

29.     The Use Policy provides that activities that impact confidentiality and integrity of information assets are unacceptable, including:

    a.   "Actions that bypass information system or network security controls, directly or indirectly;

    b.   Use of information assets that are out of compliance with the Code of Conduct or Information Security Policy;

    c.   Creating, sending, processing, downloading, or otherwise interacting with files, software, systems, or information that are not aligned with Cohesity business activities or requirements;

    d.   The use of Universal Serial Bus ("USB") devices, including flash drives, external hard drives, and other removable storage media, is prohibited unless explicitly authorized by the IT department or designated personnel; and

    e.   Storing, forwarding, synchronizing, or other sharing of Cohesity emails, documents, data, or other Company information to unauthorized third-party

systems or devices (e.g., to personal email accounts such as Yahoo, G-Mail, Hotmail, etc., to personal document management systems such as DropBox, Box, Google-drive, etc., to services run by unapproved vendors, or to memory cards)."

30.     Through its various policies and practices, Cohesity repeatedly communicates to employees that unauthorized disclosure and misuse of its confidential information is strictly prohibited.

31.     Cohesity also uses electronic controls to limit access to its confidential and proprietary information, such as requiring passwords to access Company computers and confidential information, and other controls that block unauthorized software installation and certain access to sensitive information.

32.     Cohesity limits its sensitive and proprietary information to only those employees who require the information to perform their duties.  For example, Cohesity maintains folder level restrictions for materials stored on the Company's shared network drive.  Employees are only given access to the materials necessary to perform their job duties.

**C.     Rodriguez Agreed to Never Disclose Cohesity's Trade Secrets and Confidential Information in an Unauthorized Manner.**

33.     In December 2024, Cohesity acquired Veritas Technologies LLC ("Veritas"), an enterprise data protection business.  As part of the acquisition, Cohesity onboarded many Veritas employees to continue to support and sell Veritas's signature products, including NetBackup, to Cohesity and Veritas customers.

34.     Rodriguez joined Cohesity as part of the acquisition on or about December 10, 2024.

35.     As part of his transition to Cohesity, Rodriguez's employment was governed by the Employee Handbook, which required him to adhere to all Company policies, including but not limited to Cohesity's Code of Conduct.

36.    As a condition of providing him with access to the Company's trade secrets and other confidential business information, Cohesity required Rodriguez to sign its Confidentiality Agreement.

37.    On February 13, 2025, Rodriguez executed his Confidentiality Agreement. Among other things, Rodriguez agreed as part of the Confidentiality Agreement to "hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company, except under a non-disclosure agreement duly authorized and executed by the Company."

38.    Rodriguez further acknowledged that the agreement extended to:

> any non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding Company's products or services and markets therefor, pricing lists or strategies, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my service), the non-public names and addresses of the Company's customers and suppliers, their buying and selling habits and special requirements, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, personnel information, financial information of the Company (including financial performance and metrics) or any other business information.

39.    At no point in time did Rodriguez request or obtain permission from Cohesity to acquire, disclose, or use Cohesity's confidential and proprietary information for any personal reason.

40.    Rodriguez also agreed in his Confidentiality Agreement that "at the time of leaving the service of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items . . . otherwise belonging to the Company."

**D.      Rodriguez Had Access to Cohesity's Most Sensitive Business Information.**

41.     Cohesity typically goes to market with a two-person team: an Account Executive who owns the account relationship and overall sales responsibility and a Sales Engineer who is tasked with presale activities, including evaluating a customer's unique needs and proposing technical solutions to meet those requirements.  These roles report into separate second line managers, who are responsible for all aspects of Cohesity's client-facing services.

42.     Rodriguez joined Cohesity as part of the Veritas acquisition as a Manager of Sales Engineering.  In this role, Rodriguez was the first point of contact for Cohesity customers.  He interacted directly with current and prospective customers to recommend the relevant products.

43.     In February 2025, Rodriguez was responsible for East Strategic accounts, which were some of Cohesity's largest customers.  Subsequently, in the spring of 2025, Rodriguez became responsible for the East Enterprise accounts—another set of very large Cohesity customers located in the Northeastern United States.  During this time, Rodriguez oversaw up to ten Sales Engineers.

44.     Rodriguez's core duties included developing account strategy for the Company's most significant customer accounts, shaping how Cohesity engaged its customers to expand or win business at new and existing accounts, and ensuring that the Sales Engineers reporting to him executed according to the strategies set by Rodriguez and other business leaders.

45.      As part of his job duties, Rodriguez had broad access to Cohesity's trade secrets, including its confidential and proprietary information about customers, customer needs, pricing, strategic selling objectives, new product proposals, profit margin and yield information, and future business planning.  Cohesity also provided Rodriguez with access to its institutional knowledge so that he could effectively strategize, promote, and sell Cohesity's suite of products.

46.     Rodriguez's management role required deep familiarity with Cohesity's product capabilities and competitive differentiators.  Cohesity provided Rodriguez with access to its highly coveted trade secrets, including presentations and documents regarding the value drivers and differentiators of Cohesity's products and services; non-public information about how the

Company conducts its business; highly confidential information about Cohesity's customers; detailed insider knowledge about the Company's future business plans; confidential presentations about how to win business from Cohesity's competitors; comparative analysis of Cohesity's competitors; detailed customer lists, reflecting sales projections and pricing information; competitive metrics; strategic selling presentations which detailed strategies for positioning Cohesity against its competitors; and employee lists with contact data.

47.     Rodriguez's job required that he help prepare and use a range of sensitive, nonpublic materials describing Cohesity's installed-base environments, account strategies, and competitive positioning, including documents that detail how strategic and enterprise customers deploy Cohesity's products and how Cohesity plans to expand those relationships.

48.     The materials referenced in the paragraphs above included internal documents covering existing installations, customer usage patterns, and system architectures as well as sales campaign documents outlining go-to-market plans in his territory.

49.     Rodriguez further supported his Sales Engineers by cultivating relationships with key customer contacts, including at the executive level, and representing Cohesity in key sales meetings.

50.     These exclusive customer contacts provided Rodriguez with special insight into problems faced by Cohesity's customers.  This insight, combined with Rodriguez's understanding of Cohesity's products, enabled Rodriguez to craft and refine technical and commercial messaging for customers, build bespoke value propositions, address questions about product features, and differentiate Cohesity from competitors to drive customers to select Cohesity's products as the necessary technical solution.

51.     Cohesity shared this information with Rodriguez by, among other things, sending him electronic and hard-copy documents, giving him access to Cohesity's trade secrets stored on the Company's network and available on his computer, and by assigning him the responsibility of overseeing and directly engaging in sales activities such that he became aware of the terms and conditions under which Cohesity sold its products to customers.

**E.      Rodriguez Misappropriated Cohesity's Trade Secrets and Breached His Contractual Obligations to Cohesity.**

52.      At various times during his employment at Veritas and Cohesity, Rodriguez worked with and reported to Laura Kelly ("Kelly").

53.      On or about December 19, 2025, Kelly accepted an employment offer with the competing data security company, Rubrik.  Immediately before and after Kelly received her job offer with Rubrik, Kelly identified and downloaded critical confidential documents and key trade secrets that she could rely on in interviews and to take with her to Rubrik once she secured a job with that competing organization.

54.      Kelly disclosed her new position at Rubrik to Rodriguez and participated in his recruitment to Rubrik.

55.      Cohesity is informed and believes that Kelly and Rodriguez, in connection with their planned employment with Rubrik, decided to download and abscond with Cohesity's trade secrets and other confidential and proprietary information.  Cohesity is informed and believes that they targeted this information so that they could more effectively compete with Cohesity once they started working at Rubrik.

56.      Text messages between Rodriguez and Kelly recovered from Kelly's company-issued computer between December 17, 2025 and January 2, 2026—messages Kelly attempted to delete before returning the computer—bear this out.

57.      On December 21, 2025, after Kelly tried and failed to download her PST files, she texted Rodriguez, "Maybe tomorrow we can do the mail thing," to which he promptly responded "Yup."

58.       On December 22, 2025, Kelly sent a text to Rodriguez asking "Did the download finish?" to which he responded "Still going!  I'm keeping an eye on it don't worry."  The following day, Rodriguez texted "Your email is all set."

59.      Texts that same day confirmed Rodriguez was also downloading his own PST files, including email and attachments containing Cohesity confidential information and trade

secrets.  A PST file is a data file format used by Microsoft Outlook to store local copies of email messages (including attachments), calendar events, contacts, and other items.  It is primarily used for archiving, creating backups, and managing mailbox size limits

60.     Cohesity's review of Rodriguez's activity confirmed that, consistent with these text messages, on December 22, 2025, Rodriguez created a PST file named **backup.pst**.

61.     As revealed by Cohesity's evaluation of Rodriguez's conduct, the **backup.pst** file contained gigabytes of files (including emails and attachments) selected from his Cohesity mailbox.  Rodriguez saved this file on an external network share (e.g., a home network-attached storage or Server Message Block storage network) that does not belong to the Company and that the Company has not been able to further identify.

62.     Rodriguez's theft of Cohesity's trade secrets and other confidential and proprietary information continued on December 23, 2025.  That day, Rodriguez created another PST file named **DR_backup.pst**.  This file also contained dozens of gigabytes of emails, attachments, customer lists, pricing information, customer proposals, competitive strategic plans, and other confidential data belonging to Rodriguez's Cohesity email account.

63.     Also on December 23, 2025, Rodriguez improperly, without authorization, and in violation of Company policy, accessed Kelly's email and exported the entirety of its content to a PST file titled **LK_backup.pst.**  As with the PST files he made of his own email data, Rodriguez saved Kelly's emails to a personal network share.

64.     During their text conversations, Rodriguez texted Kelly about his upcoming interviews at Rubrik.  Kelly offered to speak with Rodriguez about his interviewers and help him prepare for the meetings.

65.     On January 20, 2026, Cohesity commenced a civil action against Kelly in the United States District Court for the District of New Jersey, seeking, among other things, the return of Cohesity's trade secrets and confidential information.  In that action, *Cohesity, Inc. v. Kelly et al.,* Docket No. 3:26-cv-00644 (D.N.J.), Cohesity also seeks a temporary restraining

order preventing the dissemination or exploitation of its confidential information and trade secrets by Kelly.

66.    Cohesity is informed and believes that Rodriguez and Kelly took these files so that he and Kelly could use them improperly to compete with Cohesity on behalf of their new employer, Rubrik.

67.    The volume of information Rodriguez secretly exported and saved to non-Cohesity managed storage is staggering.  The three PST files total approximately 100 GB of data and contain critical files, including Cohesity's most sensitive confidential documents and trade secrets.  These emails contained a variety of sensitive sales and business strategy documents and other client specific material, including (1) non-public, customer lists with sensitive information outlining account status and pricing information, pipeline data and targeting strategies (including named priority accounts, sequence of executive outreach, and conversion tactics); (2) detailed and non-public descriptions of Cohesity's products; (3) proprietary sales proposals and proposal architectures to disrupt competitors' relationships with target customers and convert customers to Cohesity's products; and (4) internal performance dashboards and forecast methodologies.

68.    These emails and documents attached to them contain key details of competitive accounts on which Rubrik and Cohesity are currently doing business, and competing for priority, including significant business accounts assigned to Rodriguez.  Cohesity is informed and believes, including based on its internal assessment of activity, that Rodriguez had not previously shared Cohesity's confidential information to a personally-controlled network and there was no business reason for him to do so (i.e., for him to export and save emails outside of Cohesity) in December 2025.

69.    On January 16, 2026, Rodriguez resigned from Cohesity effective January 30, 2026.  When he informed Cohesity of his resignation, Rodriguez did not disclose that he copied the entirety of his and Kelly's email data, including emails and attachments with customer lists, competitive pricing information, customer proposals, competitive analyses, strategic plans, among other sensitive information, to a personal network share weeks earlier.  He did not

disclose to Cohesity that he intended to join Kelly at Rubrik. Cohesity subsequently confirmed that Rodriguez would be joining Rubrik by other means, and Cohesity's review of his text messages with Kelly confirm that the plan to do so was launched months ago.

70.     As part of the Company's standard process of evaluating employee activity following a resignation to join a competitor, Cohesity's IT Department evaluated several aspects of Rodriguez's pre-departure activities and interactions with Cohesity's computer network. More specifically, the IT Department reviewed Rodriguez's end point events, OneDrive file interactions, Office 365 audit logs, email forwarding activity, and Zscaler network traffic.

71.     During this evaluation, the IT Department began to uncover certain elements of Rodriguez's misappropriation of Cohesity material described above consistent with his communications with Kelly. Based on its preliminary investigation, Cohesity is informed and believes that Rodriguez engaged in a plan to identify, copy, and misappropriate Cohesity's valuable trade secret and confidential information by exporting mountains of data containing Cohesity's most sensitive business information to a personal network, as confirmed by Cohesity's IT Department.

72.     Because Rodriguez's use and disclosure of the trade secret and other confidential information stored in his and Kelly's files (including emails and attachments that contain, among other things, customer lists, competitive pricing information, customer proposals, competitive analyses, and information about Cohesity's shorter and long term strategic plan) will gravely harm Cohesity's business, Cohesity quickly acted to regain possession of the stolen material prior to Rodriguez's departure from Cohesity.

73.     On January 27, 2026, Cohesity sent Rodriguez a letter reminding him of his obligations under his Confidentiality Agreement, requiring that he return the data he stole, and setting a meeting for January 28 to facilitate the return of this information. Rodriguez neither responded to Cohesity's correspondence nor attended the meeting set by Cohesity.

74.    Cohesity contacted Rodriguez on January 28, 2026 to renew its request for a meeting on January 29.  Rodriguez again did not respond and thereby refused to meet with Cohesity and cooperate in returning the data he stole as requested by Cohesity.

75.    On January 29, 2026, Rodriguez emailed Cohesity, refusing to meet with the Company without his (unnamed) counsel, and providing no information about the three PST files he created.

76.    Cohesity responded to Rodriguez's email, confirmed that his counsel was welcome to attend, and scheduled another meeting for January 30, which was to be Rodriguez's last day of employment with Cohesity.  Rodriguez once again refused to meet with Cohesity.

77.    As of this date, Rodriguez has offered no explanation for his actions with respect to the PST files and has not returned the PST files.

78.    On January 30, 2026, Rodriguez signed Cohesity's exit certification, which is part of Cohesity's standard offboarding procedure and required under the terms of the Confidentiality Agreement.

79.    Although he and Kelly had already exported 100 GB worth of confidential documents belonging to Cohesity, Rodriguez certified that "I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to Cohesity, Inc."

80.    Rodriguez further promised that, in compliance with the Confidentiality Agreement, he would "preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees."

81.     The text messages between Rodriguez and Kelly confirm that their actions were deliberate, calculated, and coordinated.  His steadfast failure to respond to Cohesity's questions about his improper copying of Cohesity confidential information, or even acknowledge having done so, confirms Cohesity's doubts.

82.     Cohesity received Rodriguez's laptop on January 30, and a review of its contents is ongoing.

83.     Based on information and belief as alleged throughout this complaint, Rodriguez's representations that he would continue to adhere to his contractual and legal obligations were false and/or misleading.

84.     Based on Rodriguez's ongoing refusal to give back Cohesity's confidential information, Cohesity alleges that Rodriguez's scheme and his disregard of contractual commitments remains ongoing.

**F.      Rodriguez Continues to Possess, Use, and Disclose Cohesity's Trade Secrets and Confidential and Proprietary Information.**

85.     By taking the entirety of his and Kelly's Cohesity email files, including attachments, contacts, and other confidential information, Rodriguez created a massive repository with information about every aspect of Cohesity's business in the region in which Rodriguez and Kelly had worked for Cohesity.  Taken as a whole, the documents Rodriguez accessed and surreptitiously misappropriated present a comprehensive roadmap that would provide a competing business with information it would need to compete with Cohesity for certain of its most significant customers.  This information includes the identity of particular customers for a company to target, detailed non-public information about the nature and volume of customer business, business planning, contract terms, strategic objectives and customer targeting, sales forecasts and lifetime spending details, sales training materials, and product implementation protocols.

86.     The trade secrets and confidential and proprietary information misappropriated by Rodriguez provides all the information necessary for him, in connection with his employment with Rubrik, to undercut and unfairly compete with Cohesity for key customers.

87.     Cohesity is informed and believes, and on that basis alleges that armed with Cohesity's confidential and proprietary information, Cohesity has and will continue to compromise Cohesity's position in the data protection market.  Cohesity is informed and believes, and on that basis alleges that Rodriguez's wrongful conduct includes, but is not limited to, absconding with and using Cohesity's confidential information, and refusing to return Cohesity's trade secrets and other confidential and proprietary information upon the termination of his employment.

## COUNT I:

### Misappropriation of Trade Secrets, 18 U.S.C. §§ 1836, 1839

88.     Cohesity hereby realleges and incorporates by reference paragraphs 1 through 79 above.

89.     The facts alleged in this Complaint, and as further detailed in paragraphs 1 through 87, constitute actual and threatened misappropriation of Cohesity's trade secrets by Rodriguez pursuant to 18 U.S.C. § 1831, et seq.

90.     Cohesity is the owner of valuable trade secrets related to products and services used in, or intended for use in, interstate foreign commerce.

91.     Cohesity's trade secrets consists of presentations and documents regarding the value drivers and differentiators of Cohesity's products and services; non-public information about how the Company conducts its business; highly confidential information about Cohesity's customers; detailed insider knowledge about the Company's future business plans; confidential presentations about how to win business from Cohesity's competitors; comparative analysis of Cohesity's competitors; detailed customer lists, reflecting sales projections and pricing information; competitive metrics; strategic selling presentations which detailed strategies for positioning Cohesity against its competitors; and employee lists with contact data and other

sensitive information. Moreover, upon information and belief, Rodriguez gained unique, non-public and confidential insight into how Cohesity competes in the marketplace and distinguishes itself from its competitors.

92.    The information identified above and in this Complaint has independent economic value because it is not generally known to Cohesity's competitors or potential competitors, and it is not known in the industry. Cohesity has developed these trade secrets over time and through substantial expenditure of resources, and Cohesity has obtained a competitive advantage from these trade secrets.

93.    Cohesity has taken reasonable steps to maintain the secrecy of trade secrets by, among other things, using a variety of controls to regulate access to its hard copy and electronically stored data to protect the security and confidentiality of its sensitive information, requiring all employees to sign a confidentiality agreement, and enacting and enforcing policies and procedures designed to protect the Company's confidential and proprietary information.

94.    Rodriguez became aware of Cohesity's trade secrets only by virtue of his employment with Cohesity.

95.    Rodriguez misappropriated Cohesity's trade secrets by improper means, including taking the actions alleged in this Complaint. Those actions include, among other things, downloading a significant volume of confidential, proprietary and trade secret files from Cohesity's network and copying, transferring and storing the documents Rodriguez downloaded to non-Cohesity locations. Rodriguez had a duty to maintain the secrecy of Cohesity's trade secrets. Cohesity did not consent to Rodriguez's disclosure or Rodriguez's use of Cohesity's trade secrets. Cohesity alleges on information and belief that Rodriguez continues to disclose and use Cohesity's trade secrets to unlawfully compete with Cohesity.

96.    By reason of Rodriguez's acts alleged herein, Cohesity has and will suffer damages to its business and the loss of sales and profits the Company would have made but for Rodriguez's acts. Furthermore, Cohesity alleges on information and belief that Rodriguez has

used Cohesity's misappropriated trade secrets to unjustly enrich himself, entitling Cohesity to damages above and beyond Cohesity's actual loss.

97.    Rodriguez's misappropriation of Cohesity's trade secrets was for improper financial gain, has been willful and malicious, and entitles Cohesity to an award of exemplary damages and attorneys' fees and costs.

98.    Cohesity has suffered irreparable harm as a result of the activities alleged herein and will continue to suffer irreparable harm that cannot adequately be remedied at law unless Rodriguez is enjoined from engaging in any further such acts of unfair competition.

## COUNT II:
### Misappropriation of Trade Secrets, Mass. Gen. L. ch. 93,  §42

99.    Cohesity hereby realleges and incorporates by reference paragraphs 1 through 98 above.

100.    Cohesity is the owner of valuable trade secrets.  Cohesity's trade secrets consists of presentations and documents regarding the value drivers and differentiators of Cohesity's products and services; non-public information about how the Company conducts its business; highly confidential information about Cohesity's customers; detailed insider knowledge about the Company's future business plans; confidential presentations about how to win business from Cohesity's competitors; comparative analysis of Cohesity's competitors; detailed customer lists, reflecting sales projections and pricing information; competitive metrics; strategic selling presentations which detailed strategies for positioning Cohesity against its competitors; and employee lists with contact data and other sensitive information.  Moreover, upon information and belief, Rodriguez gained unique, non-public and confidential insight into how Cohesity competes in the marketplace and distinguishes itself from its competitors.

101.    The information identified above and in this Complaint has independent economic value because it is not generally known to Cohesity's competitors or potential competitors, and it is not known in the industry.  Cohesity has developed these trade secrets over time and through

substantial expenditure of resources, and Cohesity has obtained a competitive advantage from these trade secrets.

102.    Cohesity has taken reasonable steps to maintain the secrecy of trade secrets by, among other things, using a variety of controls to regulate access to its hard copy and electronically stored data to protect the security and confidentiality of its sensitive information, requiring all employees to sign a confidentiality agreement, and enacting and enforcing policies and procedures designed to protect the Company's confidential and proprietary information.

103.    Rodriguez became aware of Cohesity's trade secrets only by virtue of his employment with Cohesity.

104.    Rodriguez misappropriated Cohesity's trade secrets by improper means, including taking the actions alleged in this Complaint.  Those actions include, among other things, downloading a significant volume of confidential, proprietary and trade secret files from Cohesity's network and copying, transferring and storing the documents Rodriguez downloaded to non-Cohesity locations.  Rodriguez had a duty to maintain the secrecy of Cohesity's trade secrets.  Cohesity did not consent to Rodriguez's disclosure or Rodriguez's use of Cohesity's trade secrets.  Cohesity alleges on information and belief that Rodriguez continues to disclose and use Cohesity's trade secrets to unlawfully compete with Cohesity.

105.    By reason of Rodriguez's acts alleged herein, Cohesity has and will suffer damages to its business and the loss of sales and profits the Company would have made but for Rodriguez's acts.  Furthermore, Cohesity alleges on information and belief that Rodriguez has used Cohesity's misappropriated trade secrets to unjustly enrich himself, entitling Cohesity to damages above and beyond Cohesity's actual loss.

106.    Rodriguez's misappropriation of Cohesity's trade secrets was for improper financial gain, has been willful and malicious, and entitles Cohesity to an award of exemplary damages and attorneys' fees and costs.

107.    Cohesity has suffered irreparable harm as a result of the activities alleged herein and will continue to suffer irreparable harm that cannot adequately be remedied at law unless Rodriguez is enjoined from engaging in any further such acts of unfair competition.

## COUNT III:

### Breach Of Contract

108.    Cohesity hereby realleges and incorporates by reference paragraphs 1 through 107 above.

109.    Rodriguez entered into valid and binding contracts with Cohesity, including the Confidentiality Agreement.  Rodriguez agreed to the terms of the agreements with Cohesity in exchange for good and valuable consideration.

110.    Cohesity has performed all of its contractual obligations owed to Rodriguez under the terms of the Confidentiality Agreement.

111.    Rodriguez has unjustifiably and inexcusably breached, and continues to breach his agreements with Cohesity, including the Confidentiality Agreement by, among other things and at a minimum: (a) divulging or conveying to others information, knowledge, data, and/or property relating to Cohesity's business, including but not limited to, Cohesity's confidential, proprietary, and trade secret information; (b) failing to return Cohesity's property on termination of employment; and (c) using Cohesity's confidential, proprietary, and trade secret information after his termination of employment.

112.    As a direct and proximate result of these breaches of Rodriguez's employment agreements, including the Confidentiality Agreement, Cohesity has been damaged and has suffered irreparable harm, and continues to suffer significant irreparable harm.

## PRAYER FOR RELIEF

Cohesity prays for the following relief against Rodriguez:

1.    A judgment entered in favor of Cohesity and against Rodriguez;

2.      An award of damages sufficient to compensate Cohesity for the harms caused by Rodriguez's unlawful acts;

3.      An award of exemplary and/or punitive damages to deter Rodriguez from engaging in the types of harm alleged here;

4.      An order requiring Rodriguez to return to Cohesity all of Cohesity's confidential, proprietary, and trade secret information in Rodriguez's possession;

5.      A preliminary and permanent injunction, enjoining Rodriguez and those in concert with him from any further commission of, or participation in, the unlawful acts alleged here, including but not limited to a preliminary and permanent injunction that enjoins Rodriguez from calling on customers with whom he had contact with, obtained information about from Cohesity's trade secrets and customers that are identified in the specific materials that Rodriguez misappropriated, and a further injunction prohibiting Rodriguez and those in concert with him from disclosing or exploiting Cohesity's trade secrets and other confidential information for his benefit or that of Rubrik or any other entity;

6.      An award of disgorgement of unjust enrichment obtained by Rodriguez through the unlawful acts alleged here;

7.      An award of Cohesity's reasonable attorney's fees and costs; and

9.      Any such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Cohesity hereby respectfully demands a trial by jury of all issues so triable, pursuant to Fed. R. Civ. P. 38.

Dated: February 2, 2026

COHESITY, INC.
By its counsel,


_/s/ Christopher M. Morrison_
Christopher M. Morrison (BBO #651335)
cmorrison@jonesday.com

100 High Street, 21st Floor
Boston, MA 02110.1781
Telephone:    +1.617.960.3939
Facsimile:    +1.617.449.6999


Rose M. Mooney (BBO # 709503)
rmooney@jonesday.com
100 High Street, 21st Floor
Boston, MA 02110.1781
Telephone:    +1.617.449.6866
Facsimile:    +1.617.449.6999